UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

SANDRA K. EGGERUD          )
                          )   No. CV-07-340-CI
        Plaintiff,        )
                          )   ORDER GRANTING PLAINTIFF'S
v.                        )   MOTION FOR SUMMARY JUDGMENT
                          )   AND REMANDING FOR FURTHER
MICHAEL J. ASTRUE,        )   PROCEEDINGS
Commissioner of Social    )
Security,                 )
                          )
        Defendant.        )

BEFORE THE COURT are cross-Motions for Summary Judgment noted for hearing without oral argument on June 2, 2008.  (Ct. Rec. 9, 19.)   Attorney Lana Cece Glenn represents Plaintiff; Special Assistant United States Attorney Terrye Erin Shea represents the Commissioner of Social Security ("Commissioner").  The parties have consented to proceed before a magistrate judge.  (Ct. Rec. 4.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and remands for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**JURISDICTION**

On October 13, 2004, plaintiff Sandra K. Eggerud (Plaintiff) filed for Supplemental Security Income. (Tr. 53.)  Plaintiff alleged an onset date of October 15, 2000.  (Tr. 53.)  Benefits were denied initially and on reconsideration.  (Tr. 45, 49.)   A hearing was held before ALJ Richard A. Say on August 24, 2006.  (Tr. 253-82.) Plaintiff's counsel was present.  (Tr. 255.)  Plaintiff testified at

the hearing. (Tr. 255-73.) Plaintiff's mother, Maxine Eggerud, and Vocational Expert Fred Cutler also testified. (Tr. 274-82.) On September 12, 2006, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. 21-30.) The Appeals Council denied review on January 12, 2007. (Tr. 14.) After considering additional information provided by Plaintiff, the Appeals Council again denied review on August 27, 2007. (Tr. 5.) Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on October 26, 2007. (Ct. Rec. 1.)

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will, therefore, only be summarized here.

Plaintiff was 47 years old at the time of her testimony. (Tr. 257.) She graduated from high school and was unmarried. (Tr. 257.) Plaintiff previously worked as a housekeeper at a hotel and as a produce helper. (Tr. 258-59.) She testified that she originally stopped working due to back and neck problems. (Tr. 259.) Plaintiff also testified that she has problems with carpal tunnel syndrome (Tr. 261), arthritis in her hands (Tr. 261), and pain in her right foot (Tr. 271-72).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by

substantial evidence. *See Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus,

if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

### SEQUENTIAL PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If he or she is not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 4

or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii),
416.920(a)(4)(ii).  If plaintiff does not have a severe impairment
or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the
third step, which compares plaintiff's impairment with a number of
listed impairments acknowledged by the Commissioner to be so severe
as to preclude substantial gainful activity.  20 C.F.R. §§
404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P,
App. 1.  If the impairment meets or equals one of the listed
impairments, plaintiff is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be
disabling, the evaluation proceeds to the fourth step, which
determines whether the impairment prevents plaintiff from performing
work he or she has performed in the past.  If plaintiff is able to
perform his or her previous work, plaintiff is not disabled.  20
C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step,
plaintiff's residual functional capacity ("RFC") assessment is
considered.

If plaintiff cannot perform this work, the fifth and final step
in the process determines whether plaintiff is able to perform other
work in the national economy in view of his or her residual
functional capacity and age, education and past work experience.  20
C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482
U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish
a *prima facie* case of entitlement to disability benefits.  *Rhinehart
v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172
F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once

1   plaintiff establishes that a physical or mental impairment prevents

2   engaging in the plaintiff's previous occupation.  The burden then

3   shifts, at step five, to the Commissioner to show that (1) plaintiff

4   can perform other substantial gainful activity, and (2) a

5   "significant number of jobs exist in the national economy" which

6   plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th

7   Cir. 1984).

8                          **ALJ'S FINDINGS**

9        At step one of the sequential evaluation, the ALJ found

10  Plaintiff had not engaged in substantial gainful activity since the

11  alleged onset date of October 15, 2000. (Tr. 26.)  At steps two and

12  three, he found plaintiff had the severe impairments of bilateral

13  carpal tunnel syndrome post releases, arthritis in her hands, back

14  strain, and degenerative joint disease of the left acromioclavicular

15  (AC) joint (Tr. 26), but these impairments alone or in combination

16  did not meet or medically equal one of the listed impairments in 20

17  C.F.R., Appendix 1, Subpart P, Regulations No. 4 (Listings). (Tr.

18  27.)   The ALJ also found that Plaintiff's symptoms of thyroid

19  cancer, left foot and hip pain, and chronic obstructive pulmonary

20  disease are non-severe. (Tr. 26-27.)  Next, the ALJ determined:

21       [C]laimant has the residual functional capacity to perform
         light work.  The claimant can lift 20 pounds occasionally
22       and frequently lift or carry 10 pounds.  The claimant can
         sit for two hours and stand or walk for six hours in an
23       eight-hour workday.  The claimant can occasionally reach
         overhead bilaterally.  She can frequently use her hands to
24       finger and handle objects.  The claimant is also capable
         of performing sedentary work.  The claimant is able to
25       remain attentive and responsive in a work setting, and she
         can carry out normal work assignments satisfactorily.  She
26       would remain reasonably alert to perform the required
         functions presented by her work setting.

27

28  (Tr. 27.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 6

At step four, the ALJ found that, based on vocational expert testimony, Plaintiff could perform her past relevant work as a house cleaner and produce clerk, and that work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.   (Tr. 30.)   Therefore, the ALJ concluded Plaintiff has not been under a disability as defined in the Social Security Act since October 5, 2004, the date the application was filed. (Tr. 30.)

## ISSUES

The issue is whether the ALJ's decision is supported by substantial evidence and free of legal error.  Plaintiff argues that the ALJ: (1) did not accurately portray the severity of Plaintiff's disability (Ct. Rec. 10 at 39); (2) improperly ignored opinions of Plaintiff's treating and examining physicians (Ct. Rec. 10 at 50); (3) improperly ignored the testimony of Plaintiff's mother (Ct. Rec. 10 at 54); (4) failed to give proper weight to Plaintiff's own testimony about her impairments (Ct. Rec. 10 at 56); and (5) did not provide the Vocational Expert with an appropriate hypothetical (Ct. Rec. 10 at 61.)   Plaintiff also argues the ALJ's decision is not supported by substantial evidence and that the ALJ failed to consider the record as a whole.   (Ct. Rec. 10 at 38-39.)

The Commissioner asserts that the ALJ set out and properly evaluated the medical source evidence, lay witness testimony and Plaintiff's credibility in assessing the severity of her impairments and her residual functional capacity.  The Commissioner also asserts that the ALJ reasonably relied on the vocational expert's testimony. (Ct. Rec. 20 at 7.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISCUSSION**

**A.    SEVERE AND NON-SEVERE IMPAIRMENTS**

Plaintiff asserts that the ALJ did not accurately portray the severity of Plaintiff's disability. (Ct. Rec. 10 at 39.)  However, Plaintiff does not specifically argue that the determination of her impairments at step two as severe or non-severe was erroneous. Defendant argues that there is no error in the ALJ's analysis or findings regarding the severity of Plaintiff's impairments. (Ct. Rec. 20 at 11.)

The ALJ's use of the term "severe impairments" (Tr. 26) is part of the step two analysis outlined above.  The step two inquiry is a de minimis screening device to dispose of groundless or frivolous claims.  *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).  An impairment or combination of impairments can be found not severe if it has no more than a minimal effect on an individual's ability to do work.  *See* SSR 85-28; *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  On the other hand, a severe impairment is one that significantly limits an individual's ability to do basic work activities.  *See* 20 C.F.R. § 416.920(c).  "Basic work activities" are the abilities and aptitudes necessary to do most jobs.  20 C.F.R. § 416.921(b).

The ALJ found that Plaintiff has four severe impairments. Plaintiff's bilateral carpal tunnel syndrome, arthritis in her hands, back strain and degenerative joint disease in her left shoulder were all determined to be severe impairments. (Tr. 26.)

The ALJ concluded the Plaintiff's symptoms of thyroid cancer have been non-severe since the alleged date of onset. (Tr. 26.) Plaintiff cites doctor's notes from September 17, 2003, which

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 8

mention "chronic fatigue, unknown etiology" as evidence of a severe impairment. (Ct. Rec. 10 at 40.) However, the ALJ cites the opinion of Plaintiff's treating physician, Dr. Cathcart, in May of 2004 as evidence that Plaintiff's fatigue had improved after adjusting Plaintiff's medication. (Tr. 27, 105.) In a letter to another physician dated May 18, 2004, Dr. Cathcart stated that Plaintiff "is noticing that her fatigue is gone." (Tr. 105.) After that date, the only other significant mention of Plaintiff's thyroid issues is another letter from Dr. Cathcart dated December 1, 2004, in which he stated,

> [Plaintiff] says that all of the symptoms that she had before with the palpitations, tremulousness, weakness and fatigue are all improving.
>
> . . .
>
> Obviously, I'm thrilled that Sandra is doing as well as she is. . . . I may adjust her dose up slightly just to make sure things are going well, but in general I think things are excellent.

(Tr. 171.) The ALJ also points out that there is no evidence in the record about the effect of Plaintiff's fatigue problems on her ability to function.[1] (Tr. 27.) Based on the record, it was reasonable for the ALJ to conclude that Plaintiff's thyroid issues have been substantially moderated or resolved through medication and are not a severe impairment.

---

[1]It is noted that both Residual Functional Capacity Assessments include assessment of the Plaintiff's hypothyroidism. Neither assessment mentions a limitation or problem functioning due to hypothyroidism. To the contrary, both assessments reference medical records cited herein indicating the condition is managed.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 9

The ALJ also determined that Plaintiff's allegations of left foot and hip pain did not rise to the level of a severe impairment based on the evidence in the record. (Tr. 27.) On May 5, 2004, Plaintiff's reported an accident which caused her to have pain on the plantar and anterior surfaces of her left foot. (Tr. 128.) An x-ray revealed there was no fracture. (Tr. 146.) Plaintiff evidently mentioned lingering pain in her foot on September 21, 2004, but no treatment or testing was indicated by the physician. (Tr. 132-33.) The ALJ correctly noted that there was only one brief mention of hip pain in Plaintiff's medical records. (Tr. 27, 217.) There is no evidence that Plaintiff's foot pain or hip pain have not resolved themselves over time or that they limit her ability to perform basic work activities. Thus, the ALJ did not err in concluding that Plaintiff's foot and hip pain are non-severe.

Finally, the ALJ concluded that Plaintiff's chronic obstructive pulmonary disease (COPD) is non-severe. Plaintiff's medical records reveal mild to moderate COPD, but no evidence of active disease in September, 2003. (Tr. 139.) The ALJ pointed out that by March 16, 2005, Plaintiff had no symptoms of pulmonary disease. (Tr. 172.) The ALJ's determination with respect to COPD is therefore supported by the record.

The ALJ's findings at step two are supported by the record; therefore, the ALJ did not err.

**B.    TREATING AND EXAMINING PHYSICIANS**

Plaintiff argues that the ALJ improperly ignored testimony from Plaintiff's treating and examining physicians. (Ct. Rec. 10 at 50.) Defendant responds that the ALJ set out and properly evaluated the medical source evidence. (Ct. Rec. 20 at 7.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 10

1    Greater weight is given to a treating physician's opinion
2  because "he is employed to cure and has a greater opportunity to
3  know and observe the patient as an individual." *Magallanes v.*
4  *Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citing *Sprague v. Bowen*,
5  812 F.2d 1226, 1230 (9th Cir. 1987)).   However, an ALJ need not
6  necessarily give controlling weight to the opinion of a treating
7  physician. *Batson v. Comm. of Soc. Sec.*, 359 F.3d 1190, 1194-95 (9th
8  Cir. 2004).   The ALJ may disregard a treating physician's opinion
9  whether or not that opinion is contradicted. *Magallanes*, 881 F.2d
10 at 751.   To reject the opinion of a treating physician which
11 conflicts with that of an examining physician, the ALJ must make
12 findings setting forth specific, legitimate reasons for doing so
13 that are based on substantial evidence in the record.   *Id.*

14   In this case, the ALJ stated that he gave "little weight" to
15 the November 7, 2005, opinion of Plaintiff's treating physician, Dr.
16 Panke. (Tr. 29.)   Dr. Panke completed a Department of Social and
17 Health Services evaluation on that date (Tr. 235-38) and indicated
18 that, due to bilateral carpal tunnel, Plaintiff's handling and
19 carrying abilities were severely limited and her lifting abilities
20 were moderately limited.   (Tr. 236.)   He also checked boxes
21 indicating that her mobility was restricted in handling, pulling,
22 and pushing and concluded her overall work level is severely
23 limited.   (Tr. 236.)   Dr. Panke wrote that Plaintiff needed
24 surgery.[2] (Tr. 237.)

25 ───────────────
26    [2]Dr. Panke's evaluation only included an assessment for carpal
27 tunnel syndrome; neither back nor shoulder problems were mentioned
28 or assessed.

The ALJ also stated he gave "significant weight" to the opinion of Dr. Rose, an examining physician, and found his March 16, 2005, opinion to be persuasive. (Tr. 29, 173-74.) The ALJ pointed out Dr. Rose found no evidence of degenerative disk disease or arthritic condition. (Tr. 29, 174.) Dr. Rose also noted that, while the Plaintiff has bilateral hand pain, "[h]er dexterity is adequate at this point in time." (Tr. 174.)

Since Dr. Panke's opinion that Plaintiff has severe limitations due to carpal tunnel syndrome conflicts with Dr. Rose's opinion, the ALJ was required to set forth specific, legitimate reasons for rejecting the treating physician's opinion in favor of the examining physician's opinion. The ALJ gave two reasons for rejecting Dr. Panke's November 7 opinion. First, the ALJ pointed out that Dr. Panke's opinion was rendered two days before Plaintiff's first carpal tunnel release surgery, which presumably corrected the problem. (Tr. 29.) Second, the ALJ concluded Dr. Panke's diagnosis is inconsistent with other milder diagnoses in the record. (Tr. 29.)

It was reasonable for the ALJ to infer that the results of the assessment conducted by Dr. Panke just days before the surgery would have been different after surgery, rendering the opinion less relevant than it could have been after the surgery. The ALJ cites several post-surgery comments and notes which support the inference that Plaintiff's carpal tunnel symptom improved, including notes from Dr. Panke dated March 3, 2006, in which he states, "[t]he right [hand] is causing quite a bit of discomfort but she's been playing a game on a computer with a joystick so that has kind of flared it up. The left feels good." (Tr. 28-29, 226.) The ALJ also refers

to a follow-up radiology report on May 18, 2006, which revealed only slight and mild progressive degenerative changes in Plaintiff's hands. (Tr. 29, 190.) Notes from an orthopaedic specialist on June 22, 2006, reveal that arthritis pain in Plaintiff's right thumb got "pretty good relief" from an injection; the doctor injected her left thumb that same day. (Tr. 186.) The ALJ could reasonably conclude from the objective evidence that the Plaintiff's carpal tunnel symptoms had improved with the treatments she received. The ALJ provided specific, legitimate reasons for rejecting Dr. Panke's November 7, 2005, assessment regarding Plaintiff's carpal tunnel syndrome and, therefore, did not err.

Other opinions given significant weight by the ALJ include two Physical Residual Functional Capacity Assessments, one by Dr. Platter dated January 5, 2005 (Tr. 162-69), and one by Dr. McGowen on October 27, 2004. (Tr. 148-55.) Dr. McGowen's assessment was conducted before Plaintiff's carpal tunnel diagnosis and shoulder injury and is therefore only probative regarding Plaintiff's back pain. Dr. McGowen noted manipulative limitations, including limited reaching in all directions due to spine tension. (Tr. 151.) Dr. Platter found Plaintiff's cervical strain was "reasonably limiting" (Tr. 169) and indicated exertional limitations of occasional lifting of 20 pounds, frequent lifting of 10 pounds, standing or walking for about 6 hours in an 8-hour workday, and sitting for about 6 hours in an 8-hour workday. (Tr. 163.) Dr. Platter also noted limitations in reaching all directions, including overhead. (Tr. 165.)

The ALJ cited other objective evidence of a mild back impairment (Tr. 28), including notes from treating physician Dr. Huntwork attributing muscle spasms in her back to anxiety (Tr. 125);

July 2004 chiropractic notes indicating decreased range of motion in Plaintiff's cervical spine (Tr. 160); a September 13, 2005, radiology report showing mild degenerative changes in the lumbar facet joint and both sacroiliac joints (Tr. 243); and an April 5, 2006, exam summary from Dr. Lamb, a spine specialist, concluding that Plaintiff was not a candidate for surgery and that he did not think an MRI would reveal significant degenerative disk disease (Tr. 178-79). These objective findings are consistent with the findings of Dr. Rose, Dr. McGowen and Dr. Platter regarding Plaintiff's back injury. The ALJ did not err in weighing the medical opinion evidence regarding Plaintiff's back injury.

With respect to Plaintiff's hands, the ALJ points out Dr. Platter's conclusion that Plaintiff has no thenar atrophy is consistent with the later opinion of Dr. Dunlap, Plaintiff's hand surgeon, on October 13, 2005. (Tr. 29, 169, 182.) The ALJ also noted that Dr. Platter's assessment mentioned Plaintiff complained of pain in her hands but said there were no changes in her ability to care for her personal needs. (Tr. 29, 169.) The ALJ did not mention that Dr. Platter's assessment included manipulative limitations of "frequent r hand handle/finger due to mild CTS," (Tr. 165) and those limitations were not included in the hypothetical given to the vocational expert. However, as discussed elsewhere in this opinion, it was reasonable for the ALJ to conclude, based on records post-surgery, that Plaintiff's carpal tunnel limitations were substantially reduced or eliminated by the surgery.

The ALJ gave specific, legitimate reasons for rejecting Dr. Panke's November 7, 2005, opinion. He specifically explained his reasons for giving weight to other opinions. He also specifically

highlighted other records from Dr. Panke and other treating physicians which were persuasive in his decision.  As a result, the ALJ did not err in weighing the medical evidence.

**C.    LAY WITNESS**

Plaintiff asserts the ALJ erred by giving little weight to the testimony of Plaintiff's mother, Maxine Eggerud.  (Ct. Rec. 10 at 54.)  Defendant counters that the ALJ's assessment of the lay witness testimony was proper.  (Ct. Rec. 20 at 15.)

An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled.  *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006).  Lay witness testimony regarding a claimant's symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ.  If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'"  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  In this case, the ALJ considered the testimony of Plaintiff's mother and set forth several reasons germane to the witness for discounting, or giving "little weight," to her testimony.  (Tr. 29-30.)

One of the reasons given by the ALJ for discounting the testimony of Maxine Eggerud is that "she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms."  (Tr. 29.)  This is not an appropriate reason for discounting the testimony of a lay witness, who, by definition, has no special training or professional skills to qualify as a witness.  The ALJ erred by citing an

inappropriate reason for rejecting the witness' testimony.  This is harmless error, however, because the ALJ cited other more appropriate reasons for discounting the testimony of Plaintiff's mother.  *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9ᵗʰ Cir. 1990).

The ALJ also determined that, "by virtue of the relationship as claimant's mother, the witness cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges." (Tr. 29.)  This is a valid reason for discounting lay testimony.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9ᵗʰ Cir. 2006).

The ALJ further stated, "The mother was not able to elaborate on her own testimony and she did not provide any additional insight to the claimant's condition.  She simply agreed with the claimant. The testimony was cumulative."  (Tr. 29.)  At the hearing, Plaintiff's counsel questioned Plaintiff's mother.  The mother first confirmed that she had heard Plaintiff's testimony, then the questioning proceeded:

> Q    Okay, and the only thing I wanted to ask you is if
> you have personally observed her having difficulties as
> she so described?
>
> A    Yes.

After a brief interchange during which Plaintiff's mother apparently composed herself after having become emotional, she said:

> A    Everything she said is correct.
>
> Q    Okay, and do you help her out?
>
> A    Yes.
>
> Q    Okay.  Is there anything she forgot to mention in the

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 16

1   ways that you do help her?

2   A    I help her many times because she just can't handle

3   a lot of things and she's there with me so I'm there to

4   help.

5   Q    You're her helper?

6   A    Yeah.

7  (Tr. 274-75.)   This was the entire substantive content of the

8  witness's testimony.   Maxine Eggerud's testimony was limited,

9  unspecific and did not provide any corroborating information other

10 than a categorical agreement with her daughter's testimony.   The

11 testimony was not particularly probative or helpful.   The mother did

12 not describe her observations of her daughter's limitations or the

13 manner in which she assists her.   The ALJ considered the testimony

14 and gave it little weight.   This is not error.

15      Finally, the ALJ also concluded that significant weight could

16 not be given to Maxine Eggerud's testimony because "like the

17 claimant's testimony, [it] is simply not consistent with the

18 preponderance of the opinions and observations by medical doctors in

19 this case." (Tr. 30.)   The limited testimony offered by Plaintiff's

20 mother could reasonably be construed to be inconsistent with the

21 medical evidence.

22      Because the ALJ gave specific, legitimate and germane reasons

23 for discounting the testimony of Maxine Eggerud, the ALJ did not

24 err.

25 **D.    PLAINTIFF'S CREDIBILITY**

26      Plaintiff argues the ALJ failed to give proper weight to

27 Plaintiff's own testimony about her impairments.   (Ct. Rec. 10 at

28 56.)   Defendant asserts that the ALJ's assessment of Plaintiff's

1   credibility was proper.  (Ct. Rec. 20 at 16.)

2       In social security proceedings, the claimant must prove the
3   existence of a physical or mental impairment by providing medical
4   evidence consisting of signs, symptoms, and laboratory findings; the
5   claimant's own statement of symptoms alone will not suffice.   20
6   C.F.R. § 416.908.  The effects of all symptoms must be evaluated on
7   the basis of a medically determinable impairment which can be shown
8   to be the cause of the symptoms.  20 C.F.R. § 416.929.

9       Once medical evidence of an underlying impairment has been
10  shown, medical findings are not required to support the alleged
11  severity of the symptoms.  *Bunnell v. Sullivan*, 947 F.2d 341, 345
12  (9th Cir. 1991).  If there is evidence of a medically determinable
13  impairment likely to cause an alleged symptom, the ALJ must provide
14  specific and cogent reasons for rejecting a claimant's subjective
15  complaints.  *Id.* at 346.  The ALJ may not discredit pain testimony
16  merely because a claimant's reported degree of pain is unsupported
17  by objective medical findings.  *Fair v. Bowen*, 885 F.2d 597, 601
18  (9th Cir. 1989). The following factors may also be considered: (1)
19  the claimant's reputation for truthfulness; (2) inconsistencies in
20  the claimant's testimony or between his testimony and his conduct;
21  (3) claimant's daily living activities; (4) claimant's work record;
22  and (5) testimony from physicians or third parties concerning the
23  nature, severity, and effect of claimant's condition.  *Thomas v.*
24  *Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

25      If the ALJ finds that the claimant's testimony as to the
26  severity of her pain and impairments is unreliable, the ALJ must
27  make a credibility determination with findings sufficiently specific
28  to permit the court to conclude that the ALJ did not arbitrarily

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 18

discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

In this case, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms, but the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 28.) There is no evidence of malingering. Therefore, the ALJ was required to provide clear and convincing reasons for discounting Plaintiff's pain complaints.

The first reason the ALJ provided for finding Plaintiff's pain complaints not credible is her reported activities of daily living. The ALJ is permitted to consider daily living activities in his credibility analysis. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

> If, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.

*Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, a claimant need not be utterly incapacitated in order to qualify for benefits. *Id.* Many home activities are not easily transferable to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 19

1   the more grueling environment of the workplace.  *Id.*

2       The ALJ listed Plaintiff's reported activities of daily living
3   and concluded that Plaintiff is "a relatively active person whose
4   symptoms do not severely impede her ability to perform activities of
5   daily living and hobbies." (Tr. 28.)  Although the ALJ mentioned
6   that Plaintiff reported pain with many of her daily activities and
7   that she needed help with some of them, he did not acknowledge those
8   reported limitations in his credibility analysis.  The court
9   concludes there is not clear and convincing evidence that
10  Plaintiff's activities of daily living are inconsistent with her
11  claims of pain.

12      The second reason the ALJ provided for discounting Plaintiff's
13  pain testimony is that some of the Plaintiff's subjective statements
14  in the medical record do not support the Plaintiff's testimony.
15  (Tr. 28.) The ALJ cites a note on a physical therapy assessment
16  dated September 21, 2005, which states Plaintiff reported that her
17  back pain began when she helped a friend shampoo her carpet about
18  one month before.  (Tr. 28, 177.)  On the same assessment, it was
19  noted that "[s]he has been taking ibuprofen for her discomfort but
20  not on a regular basis." (Tr. 177.)  The ALJ inferred from the
21  notes that Plaintiff's back pain is not as severe as she alleges and
22  that there may have been a period of time after the alleged date of
23  onset when her back was not in pain.  (Tr. 28.)

24      These are not reasonable inferences given the totality of the
25  record.  Dr. Panke's notes dated September 2, September 13, and
26  October 11, 2005, refer to an incident where Plaintiff aggravated
27  her back injury in a vacuuming incident.  (Tr. 213, 215, 217.) Dr.
28  Panke, Plaintiff's treating physician, did not note any malingering

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 20

or inconsistency in Plaintiff's reports of injury.  Without more, the physical therapists's notes do not necessarily lead to the conclusion that Plaintiff has been inconsistent about taking medications or misreporting her pain.

The third reason provided by the ALJ for concluding Plaintiff's pain testimony is not credible is that the objective medical evidence shows only mild impairments.  (Tr. 28.)  Since the other reasons cited by the ALJ do not adequately support the credibility finding, the sole remaining basis for the credibility determination is the lack of objective medical evidence.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). Thus, the lack of medical evidence alone is not a sufficient basis for the ALJ's credibility finding.

Furthermore, Plaintiff's pain testimony with respect to her hands appears to at least be somewhat credible based on the record after the ALJ's decision, as she ultimately had another surgery on her left thumb on January 16, 2007.[3]

The ALJ did not provide clear and convincing reasons for rejecting Plaintiff's pain testimony; therefore, the ALJ erred.

---

[3]The surgical report dated January 16, 2007, is properly considered by this court because the Appeals Council considered it in denying Plaintiff's request for review.  *See Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 21

**E.    STEP FOUR**

At step four, the ALJ makes findings regarding residual functional capacity and determines if a claimant can perform past relevant work.  Although the burden of proof lies with the claimant at step four, the ALJ has a duty to make the requisite factual findings to support his conclusion.  SSR 82-62.  This is done by looking at the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).  In finding that an individual has the capacity to perform a past relevant job, the decision must contain among the findings the following specific findings of fact:

> 1.   A finding of fact as to the individual's RFC.

> 2.   A finding of fact as to the physical and mental demands of the past job/occupation.

> 3.   A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62.

These findings must be based on evidence in the record and must be developed and fully explained by the ALJ.  Step four requires specific findings on all three points sufficient "to insure that the claimant really can perform his past relevant work."  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *see also* SSR 00-4p.

Based on the ALJ's hypothetical, the vocational expert concluded that the plaintiff could perform past work as a house cleaner and produce clerk.  (Tr. 30, 279.)  However, the ALJ's decision does not include a finding or discussion regarding the actual physical and mental demands of the past work.  The vocational expert suggested that the actual demands of Plaintiff's past work as

a house cleaner/maid and produce clerk might have exceeded its definition of "light" work by the *Dictionary of Occupational Titles*. (Tr. 278.)  However, the ALJ's step four discussion states only that the Plaintiff "could perform these jobs as usually performed per the *Dictionary of Occupational Titles*." (Tr. 30.)

The regulations state that "[f]inding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable." SSR 82-61.  This is reversible error.  *See Pinto*, 249 F.3d at 845 (reliance on the *Dictionary of Occupational Titles* alone was not sufficient basis for a finding that claimant can perform past relevant work).

In considering the record, including the vocational expert's testimony, the undersigned concludes there is an absence of substantial evidence to support the ALJ's finding claimant could return to past relevant work as performed.  *See, e.g.*, Tr. 278. Therefore, the ALJ erred.

### CONCLUSION

The ALJ's decision is not supported by substantial evidence and free of legal error.  Accordingly, the captioned matter is **REVERSED** and **REMANDED** for step five proceedings, including additional testimony from a vocational expert.  In addition, the ALJ should consider the record as supplemented by the report of Anthony Sesters, M.D., who operated on claimant's left hand on January 16, 2007, and any other relevant information available.  It follows that the ALJ also determine whether the record should be supplemented further.  The ALJ should also make new credibility findings with specificity.  Accordingly,

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 23

**IT IS ORDERED:**

1.   Plaintiff's Motion for Summary Judgment **(Ct. Rec. 9)** is **GRANTED**.  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2.   Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **DENIED**.

3.   An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.

DATED October 21, 2008.


　　　　　　　　　S/ CYNTHIA IMBROGNO
　　　　　UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS - 24